SCURA, WIGFIELD, HEYER & STEVENS, LLP
David L. Stevens (Attorney ID 034422007)
1599 Hamburg Turnpike
Wayne, New Jersey 07470
Tel.: 973-696-8391
*Proposed Counsel for Cincinnati Terrace Plaza Retail, LLC*

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| *In re:*  CINCINNATI TERRACE PLAZA RETAIL, LLC  Debtor. | Chapter 11  Case No. 16-13384 (VFP)  Hon. Vincent F. Papalia, U.S.B.J.  Hearing Date: March __, 2016 at 10:00 a.m.  *Oral Argument Requested* |

**MOTION FOR ORDER AUTHORIZING (A) AUTHORIZING POST-PETITION FINANCING; (B) GRANTING ADEQUATE PROTECTION; (C) SCHEDULING A FINAL HEARING: (D) FINDING THE STATE COURT APPOINTED RENT RECEIVER IN VIOLATION OF THE AUTOMATIC STAY; (E) SEEKING DAMAGES STEMMING FROM THE WILLFUL VIOLATION OF THE AUTOMATIC STAY; (F) REMOVING THE RECEIVER FROM CUSTODY OF PROPERTY OF THE BANKRUPTCY ESTATE; (G) COMPELLING THE RECEIVER TO PROVIDE AND ACCOUNTING; (H) COMPELLING TURNOVER OF ALL ESTATE PROPERTY REMOVING THE RECEIVER; AND (I) GRANTING RELATED RELIEF**

Cincinnati Terrace Plaza Retail (the "Debtor") hereby moves, pursuant to Section 364(c) of the Bankruptcy Code, Rule 4001(c) of the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court, for entry of an order (i) authorizing the Debtor to obtain secured post-petition financing; (ii) granting adequate protection to secured creditors; (iii) scheduling a final hearing; (iv) for an order under 11 US.C. §§ 105 and 543 of the Bankruptcy Code finding the state court appointed rent receiver and mortgage holder in violation of the Automatic Stay; (v) seeking damages stemming from the willful violation of the automatic stay pursuant to 11 U.S.C

§ 362(k); (vi) removing the receiver from custody of property of the bankruptcy estate; (vii) compelling the receiver to account for all money received and disbursed with respect to property of the estate; and (viii) compelling turnover of all estate property; and (iv) granting related relief (the "Motion"). In support of this motion, the Debtor represents as follows:

### PRELIMINARY STATEMENT

The Debtor is seeking authorization to incur post-petition financing in order to make necessary repairs to the real property located at 15 West 6th Street, Cincinnati, Ohio. The funds will also be used to improve the real estate and provide for carrying cost until it can be sold for a fair value. Only after making repairs and improvements, as well as providing for adequate marketing efforts, will the property yield its highest potential value and thereby satisfy the best interest of the all interested parties; all interested parties, that is except perhaps one, Madison Realty Investments, Inc. ("Madison").

The Debtor is also seeking to remove the state court appointed receiver. Although originally seeking an agreement with the receiver to excuse it from compliance with Section 543, it has become clear that the receiver is at best an impendent to this reorganization and at worse a pawn being used by Madison to assist with its surreptitious goals.

Lastly, the Debtor requests the Court to sanction the receiver for unduly frustrating the Debtor's access to the real property. As explained in the certification of Alan Friedberg made in support of the Motion, the receiver has not been forthright is responding to Debtor's counsel and has refused to accept attempts to work together consensually.

The Debtor seeks sanctions against Madison for continuing efforts to confirm the foreclosure sale despite having actually knowledge of the bankruptcy filing of the Debtor and it's

affiliated entities. Not only did it run to record the state court order entered post-petition, it thereafter sent Debtor's counsel a Rule 11 letter in which it demanded that the bankruptcy petitions be dismissed because the Ohio state court <u>convened a hearing on confirmation of sale</u> prior to the bankruptcy filing. Counsel for Madison carefully crafted the language to purposefully not state that any action was indeed taking pre-petition. He knew full well it was not. The confirmation order was in fact entered some time after the filing. This important fact was made clear in open court and before Madison ran to the clerk's office to file the confirmation order nonetheless.

## **JURISDICTION AND VENUE**

This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. § 157(a) and § 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (D), and (E)). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409(a)

## **BACKGROUND**

On February 25, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 <u>et</u> <u>seq.</u> (the "Bankruptcy Code"). No trustee or official committee of unsecured creditors has been appointed. The Debtor is a limited liability company and currently remains in control of and responsible for the management of the estate as debtor-in-possession. Submitted simultaneously with and in support of this Motion is the Certification of the Debtor's managing member, Alan Friedberg, (the "Friedberg Certification") which sets forth a detailed description of the Debtor's business and the pertinent facts relied on in support of the Motion.

The Debtor and its affiliated entitles, Cincinnati 926 Hotel, LLC and Cincinnati 926 Office, LLC, together own real property located at 15 West 6th Street, Cincinnati, Ohio and commonly known as Terrace Plaza (hereinafter "Terrace Plaza" or the "Property"). Terrace Plaza is a 19-story commercial mixed-use building consisting of a total of 600,000 square feet of space. The building is currently occupied by retail tenants on the ground floor, floors two through seven are purposed for office tenants, and floors eight through nineteen is purposed for hotel rooms.  Only the retail portion of the building is occupied. The Debtor is the owner of the ground floor retail space.

Terrace Plaza is located in the central business district of Cincinnati.  It was once the gem of Cincinnati and remains an American icon and of national and international significance for its mid-century modernist design. Despite alterations through the years, and some of its famous artworks having been sold to the Cincinnati Art Museum, many original interior materials and details remain. The Terrace Plaza remains on one of the most significant buildings of the mid-twentieth century.

The hotel portion of Terrace Plaza ceased operating in 2008 and only the retail portion remains operable. The building was purchased in June 2013 in a status of disrepair.  There were several violations issued by the municipality and the building was considered a public safety hazard. The Debtor hired safety consultants and made repairs acceptable to the municipality. Mr. Friedberg has in fact been involved with many similar projects in his thirty-seven year career where he was required to first stabilize the building before renovating.

Prior to the state court receiver taking control of the building, the building was stabilized from public safety hazards. The Friedberg Certification recites some of the corrective action taken before relinquishing control to the state court receiver and he discredits the

4

receiver's narrative that the building is increasingly a threat to public safety. In fact, according to Mr. Friedberg little has been done since relinquishing control to the receiver. The Debtor's original intent was to restore the building to full operations, but presently it intends to make necessary repairs and quickly sell the property.

The Debtor has been approved for the post-petition financing as described in the Term Sheet annexed the Friedberg Certification. A commitment letter is being drafted but can not be provided until the lender is given access to again inspect the Property. The state court receiver has restricted access to the Property until this point. Once the commitment letter is received it will be filed in supplemental support of the Motion. The anticipated closing is April 7, 2016 and after Bankruptcy Court authorization.

The post-petition loan would be secured by a super-priority lien on the real property owned by all three affiliated entities, Cincinnati Terrace Plaza Retail, LLC, Cincinnati 926 Hotel, LLC and Cincinnati 926 Office, LLC. The Debtor is proposing to use these funds to make immediate necessary repairs to the building in order to resolve violations with the municipality. Funds are also allocated for twelve months of operational expenses, to establish a reserve for twelve months of real estate taxes and miscellaneous property expenses, and $1,010,000 is allocated for additional improvements and repairs to the property.

The Debtor is also seeking for an order removing the receiver, Prodigy Properties, LLC ("Prodigy"). Although not opposed to a receiver conceptually, Prodigy Properties has proven to be an impendent to reorganization. It has become increasingly clear that Prodigy has an agenda that is not consistent with solely protecting and preserving the property. It is believed that Prodigy is intentionally obstructing the Debtor's ability inspect, market, or obtain financing for the building. This belief was made certain on March 10, 2016 when Prodigy made good on its

5

promise to report a burglary to the police if Mr. Friedberg tried to gain access to the property. The Freidberg Certification recites to efforts made by Debtor's counsel to reach a consensual resolution to allow access to the property, the lack of cooperation from the Prodigy in return, and uncharacteristic conduct by a receiver to obstruct this reorganization.

On March 10, 2016 the affiliated entities, Cincinnati 926 Hotel, LLC and Cincinnati 926 Office, LLC, filed their chapter 11 bankruptcy petitions. The petitions were filed electronically at 8:33 a.m. and 8:38 a.m. The certification of Kevin R. Feazell, Mr. Friedberg's Ohio counsel, recites the events taken place in the Ohio courtroom minutes later during a hearing which was scheduled to be a status conference. Essentially, Madison surprised Mr. Feazell by motioning the Ohio judge for an order confirming the foreclosure sale for Cincinnati 926 Hotel, LLC and Cincinnati 926 Office, LLC. Although the motion to confirm the sale was pending, it had been stayed as a result of the Debtor filing its petition the week prior. There was no notice that the Ohio court would consider confirmation and Madison did not disclose that it would seek confirmation on this date.

Prior to the Ohio judge executing an order to confirm the foreclosure sale, Mr. Feazell looked at his email and noticed the bankruptcy filing. He informed the court and Madison of the event. Rather than stay any further action, Madison ran to the clerk's office to get the order entered.

As a result of Madison's actions the Debtor will need to file a motion to vacate the Ohio order. Further, Debtor's counsel will need to respond to Madison's threat of sanctions for filing the petitions despite the confirmation of the sale divesting Terrace Plaza from the estate. Madison knows this allegation to be false. Its cagey reference to convening the hearing rather than candidly stating the sale was confirmed evidences that its deceitfulness.

6

## RELIEF REQUESTED AND LEGAL BASIS THEREFORE

By this Motion, the Debtor respectfully requests the entry of an order pursuant to Section 364 of the Bankruptcy Code, Rule 4001 of the Federal Rules of Bankruptcy Procedure, and the Local Rules of this Court, for entry of an order (a) authorizing the Debtor to obtain debtor-in-possession financing, (b) granting secured claims, and (c) granting related relief.

### POINT I
### (THE NEED FOR POST-PETITION FINANCING)

The Property is an historic commercial mixed-used property that includes retail, office, and hotel space. The property is in need of repairs in order to obtain the highest possible value for future sale. If the Debtor is unable to fund the proposed repairs, the property will sell at a substantially lower price, which will not be in the best interest of the Debtor's estate and its creditors.

The proposed financing shall be secured by a first mortgage on the Property and shall be prime and superior to all liens and encumbrances upon the closing of the subject loan.

The Debtor believes, in his business judgment, that accepting the funds provided by Lender will not only permit the continuation of this bankruptcy case, but will provide the greatest return to all creditors in its chapter 11 reorganization plan.

### Summary of Post-Petition Financing

The Lender is an institutional lending company with an exceptional reputation for funding complex and situational real estate transaction. Pursuant to the Term Sheet, the Debtor will receive a cash loan (the "Loan") from the Lender in the amount up to $2,000,000.00. The Loan shall be subject to all the provisions and terms as described in the Term Sheet, a copy of which is attached as Exhibit A to the Friedberg Certification.

The Term Sheet contains the following pertinent terms:

7

| | |
|---|---|
| BORROWER: | Cincinnati Terrace Plaza Retail, LLC, Cincinnati 926 Hotel, LLC, and Cincinnati 926, LLC |
| LENDER: | Knighthead Funding, LLC |
| LOAN AMOUNT: | up to $2,000,000.00 |
| INTEREST: | 11% per annum payable in arrears calculated on a 360 day year and charged on actual days. In the event of an event of default, the interest rate shall be 24%. A late fee of 10% shall be applied to all payments which are received five days after due date. |
| BREAK-UP FEE: | If, after this Term Sheet is executed, the financing is authorized, and Lender is prepared to make the Loan on substantially the same terms as those outlined in this offer letter, but prior to funding, the Borrower or an affiliate or controlled entity either obtains debt or equity financing for the Property from a source other than Lender, or sells the property, then Lender will be deemed to have earned a Break-Up Fee of 2%. |
| MATURITY TERM: | 12 Months |
| PREPAYMENT: | No prepayment of loan shall be permitted without Lender, having received all interest which will have accrued through the first twelve full months after the origination of the loan, absent any prepayment. |
| COLLATERAL: | The proposed financing shall be secured by a first mortgage on the Property and shall be prime and superior to all liens and encumbrances upon the closing of the subject loan. |

The Debtor asserts that the terms of the Loan do not run counter to this Court's General Order Adopting Guidelines for Financing Requests (the "General Financing Order"). The Debtor acknowledges that any claims related to the enforcement of the Loan, or disputes as to their terms, are subject to the non-exclusive jurisdiction of this Court for the pendency of this case.

Pursuant to section 364 of the Bankruptcy Code, the trustee or debtor-in-possession may obtain post-petition credit. Having recognized the natural reluctance of lenders to extend credit to

8

a debtor in bankruptcy, Congress designed [section] 364 to provide "incentives to the creditor to extend post-petition credit." *In re Defender Drug Stores, Inc.*, 126 B.R. 76, 81 (Bankr. D. Ariz. 1991). The incentives enumerated in section 364 are not intended to be an exhaustive list of the inducements that a court may grant. Id. In fact, it is not uncommon for a court to approve a lending arrangement containing terms that far exceed those authorized by section 364. Id.

Courts will evaluate the facts and circumstances of a debtor's case and accord significant weight to the necessity for obtaining the financing. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990). Debtors-in-possession are generally permitted to exercise their basic business judgment consistent with their fiduciary duties when evaluating the necessity of proposed protections for a party extending credit under section 364 of the Bankruptcy Code. Id.

In the present case, the Debtor seeks post-petition financing pursuant to 364(d)(1), which states as follows:

> (d)(1) The court, after notice and a hearing, may authorize in obtaining of credit or the incurring of debts secured by a senior or equal lien on property of the estate that is subject to a lien only if-
>
> (A) the trustee is unable to obtain such credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

11 U.S.C. § 364(d)(1). "The first prong requires the debtor demonstrate that less onerous post-petition financing was unavailable." *In re Reading Tube Indus.*, 72 B.R. 329, 332 (Bankr. E.D. Pa. 1987). "The second prong of the Section 364(d) test requires the debtor to prove adequate protection of the interest of the holder of the lien on the property of the estate by which such senior or equal lien is proposed to be granted." *In re Reading Tube Indus.*, 72 B.R. at 332-33.

9

"Adequate protection is designed to preserve the secured creditor's position at the time of the bankruptcy." *In re Dunes Casino Hotel*, 69 B.R. 784, 793 (Bankr. D.N.J. 1986). "The existence of equity above the secured party's interest which provides an 'equity cushion' to the secured party…provide adequate protection." *In re Dunes Casino Hotel*, 69 B.R. 794; *In re Shaw Indus., Inc.*, 300 B.R. 861, 865 (Bankr. W.D. Pa. 2003)("The existence of an equity cushion alone can constitute adequate protection."). "Equity cushion has been defined as the value of the property above the amount owed to the creditor with a secured claim that will shield the interest from loss due to any decrease in the value of the property during the time the automatic stay remains in effect." *Id.* at 795.

In the present case, the Debtor has met the first prong as required by section 364(d)(1)(A). Following the Petition Date, Debtor sought financing from post-petition financiers. See Friedberg Certification. Unfortunately, the Debtor was unable to obtain any other offers in order to repair the Property. The Lender is willing to provide the required funds premised substantially on its super-priority lien status and understanding of the belief of the value of the Property. Thus, the financing is consistent with the main objectives of Chapter 11.

The Debtor also meets the second prong as required by section 364(d)(1)(B). The first mortgage holder is owed approximately $5,375,000.00. *See* Friedberg Certification. At the foreclosure sale the mortgage holder credit bid approximately $7,200,000.00 for the Property. Accordingly, there is a substantial equity cushion in the Property. Moreover the proposed financing allows for twelve months of operating expenses, a reserve for twelve months of real estates taxes and miscellaneous property expenses, and $1,010,000.00 is allocated to repair of the property. Id. Thus, the mortgage holder is adequately protected, in that the estate benefits from the ability to realize a higher sales price because of the improvements to the property and ability

10

to nationally market the property. Id. It is expected that through the Debtor's plan, all creditors will be paid in full. Id.

For these reasons, the proposed financing satisfies the applicable legal standards of section 364 of the Bankruptcy Code.

### POINT II
### (SECTION 543 COMPELS TURNOVER OF RENTS AND REMOVAL OF RECEIVER)

Congress has provided bankruptcy courts with jurisdiction to supervise and remove state court appointed receivers. Under Code § 543, the state court's jurisdiction over its appointed receiver terminates once the debtor files a petition for bankruptcy relief. Nothing remains for the pre-petition receiver to do except comply with Code § 543. *In re Rimsat*, 193 B.R. 499, 502 (Bankr. N.D. Ind. 1996).

The Bankruptcy Code § 543(b) provides that:

> A custodian shall (1) deliver to the trustee any property of the debtor transferred to such custodian, or proceeds of such property, that is in such custodian's possession, custody, or control on the date that such custodian acquires knowledge of the commencement of the case; and (2) file an accounting of any property of the debtor, or proceeds of such property that, at any time, came into the possession, custody, or control of such custodian.

A state court appointed receiver is a "custodian" within the meaning of Code § 101(11). *In re Lizeric Realty Corp.,* 188 B.R. 499, 506 (Bankr. S.D.N.Y. 1995). Therefore, once a bankruptcy petition is filed, a non-bankruptcy custodian's receivership terminates and the custodian must, as a general proposition, deliver the debtor's property to the trustee or the debtor, and must account for the properties which were in the custodian's possession, custody, or control as a custodian. *See In re WPAS, Inc.*,6 B.R. 40, 43 (Bankr. M.D. Fla. 1980).

11

In the context of the Debtor's effort to reorganize, there is no point in having the receiver continue in place. Each month the receiver collects substantial fees for managing the properties. Moreover, the receiver's retention of estate property and continued collection of rents robs the estate from income necessary to administer the bankruptcy case.

The Debtor is capable of managing the Property itself and intends to retain a management company to assist. If required, the Debtor will agree to a new receiver to be established, albeit one that is selected consensually. To be certain however, Prodigy must be removed.

The Debtor requests entry of an order directing turnover of property of the estate, prohibiting control over property of the estate, and compelling an accounting of revenue received from the Property and disbursed by the receiver.

## POINT III
### (VIOLATION OF AUTOMATIC STAY)

The Bankruptcy Code provides that the automatic stay of an act against property of the estate continues until the property is no longer property of the estate. 11 U.S.C. § 362(c)(1). While motions to terminate, annul, or modify the automatic stay are specifically defined as core proceedings under 28 U.S.C. § 157(b)(2)(G), a motion brought by an individual injured by any willful violation of the automatic stay seeking to recover actual damages and, in appropriate circumstances, punitive damages, for a violation of the stay, has been viewed as being within the meaning of a core preceding, even though not explicitly listed as a type of core proceeding. *In re F/S Airlease II, Inc.*, 67 B.R. 428, 431 (Bankr. W.D. Pa. 1986); *In re Elegant Concepts, Ltd.*, 67 B.R. 918 (Bankr. E.D. N.Y. 1986).

Pursuant to section §362(a)(1) of the Bankruptcy Code the filing of a bankruptcy

12

petition stays:

> [T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was of could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

and Section §362(a)(3) prohibits:

> Any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

In relevant part, § 362(k) provides that "an individual injured by any willful violation of a stay provided for by this section shall recover actual damages, including costs and attorneys fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k). A willful violation does not require a specific intent to violate the stay. *S In re Atlantic Bus. and Community Corp.*, 901 F.2d 325, 328 (3d Cir. 1990) ("willful violation" requires that a defendant knew of the stay and that actions which violated stay were intentional); *In re Lansdale Family Restaurants*, 977 F.2d 826, 829 (3d. Cir. 1992) (violation "willful" if creditor knows of the stay and takes intentional action violating it).

Damages may be awarded under § 362(k) when a creditor with knowledge that a bankruptcy petition has been filed commits a volitional act that violates the stay. *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp,* 337 F.3d 314, n.8 (3rd Cir. 2003). The Third Circuit has held that § 362(k) is applicable to corporate debtors. *See In re Atlantic Business & Community Dev. Corp.*, 901 F.2d 325, 329 (3d Cir. 1990); *In re Elder-Beerman Stores Corp.*, 197 B.R. 629, 631 (Bankr. S.D. Ohio 1996). In the alternative, this Court may issue a contempt order, in the exercise of its statutory authority,

11 U.S.C. § 105(a), to enter "necessary or appropriate" orders. *See In re Del-Met Corp.*, 322 B.R. 781 (Bankr. M.D. Tenn. 2005).

Unlike § 362(k), § 105(a) does not expressly authorize any specific kind of damages. It states:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

If contempt is present, the court may sanction the offending creditor by awarding damages and attorneys' fees to the debtor for the cost of bringing action. *See In re Clark, Williams et al. v. Clark*, 91 B.R. 324, 326 (Bankr.E.D.Pa. 1988); and *See TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir. 1983) ("The award of attorney's fees and expenses to a successful movant may be appropriate in a civil contempt proceeding."); *Duling v. First Fed. Bank of the Midwest (In re Duling)*, 360 B.R. 643, 645 (Bankr. N.D. Ohio 2006) ("The sanctions imposed by a court may include an award of damages to the debtor, including reasonable attorney fees.").

To prevail in a civil contempt proceeding, a debtor must prove that the creditor violated a definite and specific order of the court of which the violating party had knowledge of the court's order. *In re Demp,* 23 B.R. 239, 240 (Bankr. E.D. Pa. 1982). Whether the facts of this case represent an appropriate circumstance for the imposition of punitive damages turns on the following factors that have been culled from the Restatement and the case of *In re M.J. Shoearama, Inc.,* 137 B.R. 182, 190 (Bankr.W.D.Pa.1992) citing *In re B. Cohen & Sons Caterers, Inc.*, 108 B.R. 482, 487

14

(Bankr. E.D. Pa.1989):

    (1) the nature of the offending party's conduct;
    (2) the nature and extent of the harm to the plaintiff;
    (3) the nature and extent of the harm the offending party intended to cause;
    (4) any provocation by the debtor; and
    (5) the offending party's ability to pay damages.

In the case at bar, the both the receiver and Madison had knowledge of the filing of the bankruptcy case and the demand for turnover of estate property. The receiver continues to exercise control over property of the estate and has restricted access to the Property. Madison's act of running to file the Ohio order with knowledge that the bankruptcy cases had been filed must be seen for what it is: an attempt to later create narrative that the order was entered prior to the bankruptcy filing. In fact that is just what its counsel attempted to persuade debtor's counsel of.

As a result the Debtor has incurred legal expenses necessary to enforce the stay, to access and recover property of the estate, and will be burdened with the expense to vacate the Ohio order. It is reasonable to conclude that both the receiver and the mortgage holder have the ability to pay the damages sought to be recovered.

## **CONCLUSION**

The Debtor submits that it is appropriate and entirely consistent with applicable provisions of the Bankruptcy Code and case law for the Court to award the Debtor the costs of bringing this motion to enforce the stay. It is also a significant impediment to the Debtor's burden of attempting to reorganize and to promulgate an acceptable plan of reorganization if the Debtor does not have access to all of its assets during its initial breathing spell. It is also respectfully submitted that authorization for post-petition

financing is in the best interest of all but one of the creditors, the Debtor, and its equity holders.

WHEREFORE, the Debtor respectfully requests entry of an order authorizing the Debtor to incur post-petition financing on a secured basis as proposed herein and grant liens and priorities in connection therewith, all as set forth in more detail in the annexed proposed order. It is also requested that the Court to find the state court appointed receiver and the mortgage holder in contempt of court for their respective violations of the automatic stay; to enter the proposed order annexed hereto awarding the Debtor the costs of bringing this motion and other damages resulting from the violations; to compel turnover and control of estate property, directing the receiver to provide an accounting of all rents received since the receiver's appointment; and for such other and further relief as may be just.

                                      Respectfully submitted,

                                      SCURA, WIGFIELD, HEYER & STEVENS, LLP
                                      Proposed Counsel to the Debtor


Dated: March 10, 2016                          By: */s/ David L. Stevens*
                                                                David L. Stevens